IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALEXIS RICHARD GROSS, #010-687       *

Plaintiff                            *

v                                    *       Civil Action No. WMN-15-2041

STATE OF MARYLAND                    *
THOMAS B. FINAN CENTER
CUMBERLAND MARYLAND DOCTORS          *
  and STAFF
                                     *
Defendants
                                  ***

# MEMORANDUM

On July 13, 2015, Alexis Richard Gross ("Gross"), then and presently confined at the Clifton T. Perkins Hospital Center ("CTPHC"), filed a claim later amended, alleging his money and property are taken by staff at CTPHC.[1] Gross also claimed he has been wrongfully assigned to a maximum security ward. Gross sought money damages and contended he is entitled "to go home a free man…" ECF Nos. 1 and 4. Because it was unclear why Gross was admitted to CTPHC and why he remained there, counsel for Maryland's Department of Health and Mental Hygiene was ordered to provide a response. ECF No. 5. Counsel has filed an unopposed[2] Motion to Dismiss (ECF No. 6). For reasons set forth herein, the Motion shall be granted.

### Preliminary Consideration Regarding Competency

---

[1] Perkins, a facility administered by Maryland's Department of Health and Mental Hygiene, is Maryland's forensic psychiatric hospital where those found not criminally responsible are treated.
*See* http://dhmh.maryland.gov/perkins/SitePages/Home.aspx.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk on September 29, 2015 informed Gross that counsel had filed a dispositive motion; that Gross had seventeen days in which to file written opposition to the motion; and that if Gross failed to respond, his case could be dismissed without further notice. ECF No. 7. Gross has failed to respond to the motion.

CTPHC is a psychiatric hospital administered by Maryland's Department of Health and Mental Hygiene ("DHMH"). It receives patients requiring psychiatric evaluation who have been accused of felonies and have raised the Not Criminal Responsible ("NCR") defense and/or their competency to stand trial is in question. CTPHC also provides treatment to offenders who have been adjudicated NCR and/or incompetent to stand trial and accepts by transfer felons from other correctional facilities who meet the criteria for involuntary commitment. CTPHC further accepts patients from other state regional psychiatric hospitals whose behavior is violent and aggressive.[3]

Because Gross has been deemed incompetent, this Court first must consider whether a guardian must be appointed to represent his interests here. Fed. R. Civ. P. 17(c)(2) states:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

With respect to Rule 17(c)(2), the Fourth Circuit has observed that "[t]he practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without counsel, is a real one," adding that "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability. *Hudnall v. Sellner*, 800 F. 2d 377, 385 (4th Cir. 1986). Rule 17(c)(2) recognizes the existence of some forms of mental deficiency which may affect a person's practical ability to manage his or her own affairs that goes beyond "something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders." *Id.*

---

[3] *See* http://dhmh.maryland.gov/perkins/SitePages/Home.aspx.

The rule allows this Court to appoint a guardian ad litem, but it does not compel it to do so. Rather, it grants the Court considerable discretion to issue an "appropriate order" to protect the interest of an unrepresented, incompetent litigant. *See Seibels, & Bruce Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996).

Gross has shown that he is sufficiently competent to state a federal claim; indeed, based on Gross's Complaint, as amended, counsel for DHMH has been ordered to show why Gross is at CTPHC, whether he is entitled to release, and why he has been placed on a maximum security ward. While he has filed no opposition to DHMH's response, that failure does not affect this Court's analysis under Rule 17.

### Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont, supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds

that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 Fed. Appx. 274 (4th Cir. 2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment

ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted). Gross has not requested additional material needed to respond to defendant's motion, nor has he filed an affidavit under Rule 56(d) suggesting what additional discovery is needed, nor does this Court find such material necessary to determine this case. Moreover, I am satisfied that it is appropriate to address Defendants' motion as one for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that

6

there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because Gross is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must also abide, however, by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Discussion

Gross' Complaint presents hybrid claims: to the extent he alleges his commitment is illegal, the claim must be construed as a habeas corpus application under 28 U.S.C. § 2241. His claims that DHMH staff at the various facilities to which he has been confined steal his money, mistreat him, and keep him in maximum security without cause are construed as civil rights claims under 42 U.S.C. § 1983.

The challenge to commitment shall be examined first. Counsel's argument that Gross has failed to sue the proper custodian is correct, but not dispositive of the issue of lawful commitment. It is uncontroverted that on November 23, 1991, Gross was found not criminally responsible for attempted rape and committed to DHMH for institutional care and treatment. Order, *State v. Gross*, Case No. 89-229 (Cir. Ct. Calvert Cty. Nov. 23, 1991) (attached as Exhibit 1 to ECF No. 6); Affidavit of Khalid El-Sayed ("El-Sayed Affidavit") ¶ 5 (attached as Exhibit 2). He was admitted to CTPHC for care and treatment and remained there until August 21, 2008,

when he was discharged to another State psychiatric hospital, Eastern Shore Hospital Center ("ESHC"). El-Sayed Affidavit ¶ 5.

Gross returned to CTPHC from ESHC on February 23, 2010. *Id.* He remained there until January 20, 2012, when he was discharged to the Thomas B. Finan Center ("Finan Center"), a State psychiatric hospital in Cumberland, Maryland. *Id.* On September 30, 2014, Gross again returned to CTPHC because of his assaultive behavior at Finan Center. *Id.*

Pursuant to statute, after his commitment, an administrative law judge ("ALJ") held a hearing on January 23, 1992, to determine whether Gross' commitment to DHMH should continue. The ALJ recommended continued commitment. The Circuit Court for Calvert County found that Gross had not proved his eligibility for release and ordered his continued commitment. *See* Order of Continued Commitment, *State v. Gross*, Case No. 89-229 (Cir. Ct. Calvert Cty. May 29, 1992) (attached as Exhibit 3).

On at least five occasions since 2000, Mr. Gross has filed a petition for judicial release from his commitment. On four of those occasions, he then voluntarily dismissed his petition. ECF No. 6, Doc. Nos. 7, 8, Case Information, *Gross v. Department of Mental Health*, Case No. 04-C-00-000236 (Cir. Ct. Calvert Cty.) (attached as Exhibit 4); Doc. Nos. 8, 9, Case Information, *Gross v. Department of Mental Health and Hygiene*, Case No. 04-C-01-000609 (Cir. Ct. Calvert Cty.) (attached as Exhibit 5); Doc. Nos. 13, 14, Case Information, *Gross v. Department of Health and Mental Hygiene*, Case No. 04-C-04-000208 (Cir. Ct. Calvert Cty.) (attached as Exhibit 6); Doc. Nos. 9, 10, Case Information, *In the Matter of Alexis Gross*, Case No. 04-C-07-000888 (Cir. Ct. Calvert Cty.) (attached as Exhibit 7).[4]

---

[4] *See also* http://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?

Gross' most recent petition for release was filed September 15, 2015, and is still pending. Case Information, *Gross v. Department of Health and Mental Hygiene*, Case No. 04-C-15-001120 (Cir. Ct. Calvert Cty.) (attached as Exhibit 8); Petition for Judicial Release and Jury Trial, *Gross v. Department of Health and Mental Hygiene*, Case No. 04-C-15-001120 (Cir. Ct. Calvert Cty.) (attached as Exhibit 9). According to the most recent petition, Gross "was last found ineligible for release . . . in 2012." ECF No. 6, Exhibit 9 ¶ 2.

The provisions of former 12-118 of Maryland's Health-General Article and current section 3-119 of the Criminal Procedure Article permit Gross to seek release once a year through either an administrative hearing or a trial in the appropriate Circuit Court. As a person committed to a mental health facility, Gross has a right under Maryland law to file a petition for release in state circuit court located in the county where he resides, where he resided before admission to the facility, or where the facility is located. *See* Md. Health Gen. Code Ann., § 10-805(a) and (b). Denial of an application for release may be appealed. *See* Cts. & Jud. Proc. Art. 3-702(a); Health-General Art. §10-804(a). Gross has not completed his challenge to his commitment order in state court. Accordingly, the habeas portion of Gross' Complaint shall be dismissed without prejudice.

Gross also alleges mistreatment treatment at CTPHC, including his continuing placement in a maximum security ward. In doing so, he fails to name individuals, but instead names entities not amenable to suit;[5] nonetheless, his claim of mistreatment shall be examined. According to his treating physician, Dr. El-Sayed, Gross carries a diagnosis of Schizoaffective Disorder, Bipolar Type. His symptoms include grandiose and persecutory delusions, disorganized thinking, and assaultive behavior. His delusions include claims that he has billions of dollars, that the staff at Finan Center stole money from him, and that the staff at CTPHC also

---

[5] *See Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989).

is stealing from him. ECF No. 6, Exhibit 2 at ¶ 4. His medical records show that his delusions about having money and the staff stealing that money are chronic. Those records also show that he has exhibited assaultive behavior periodically throughout his commitment to DHMH. *Id.* ¶ 7.

During the time that Dr. El-Sayed has been his treating physician, Gross' symptoms have been difficult to bring under control with medication. Though he remains symptomatic, his condition began to improve in late July 2015 after a change in his medication. *Id.* at ¶ 6. Gross is currently a patient on a maximum security ward at CTPHC because of his delusions and assaultive behavior. Due to his extensive psychiatric history, ongoing delusional thought content, a history of violence related to his exhibited symptoms, and his history of prior failed treatment in the less restrictive State psychiatric hospitals, Gross' transfer to a medium security ward at CTPHC requires careful consideration and treatment planning, and will occur only if his symptoms continue to improve. At this time, it is Dr. El-Sayed's opinion to a reasonable degree of medical certainty that Gross does not currently meet the criteria for conditional release. He continues to be dangerous, because of his mental disorder, to himself or the person or property of others. *Id.* ¶ 8.

Thus, it is clear that Gross' claims of abuse are a product of his delusional thought and may be dismissed for failure to state a claim. *See Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Cochran v. Morris*, 73 F.3d 1310, 1314 (4th Cir. 1996). A separate order follows.

/s/
_____
William M. Nickerson
Senior United States District Judge

DATED: February 23, 2016